**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**PEDRO P. ACOSTA,**

        **Plaintiff,**

**-vs-**                                        **Case No. 6:06-cv-840-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

## ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's application for social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### *PROCEDURAL BACKGROUND*

Plaintiff protectively filed applications for disability insurance benefits and Supplemental Security Income (SSI) on June 11, 2003 (R. 21, 51A-51D). Plaintiff's applications were denied initially and upon reconsideration, and he requested and received an administrative hearing before an Administrative Law Judge ("the ALJ") (R. 29-34, 43-45,136-57). The ALJ issued an unfavorable decision on February 23, 2006, in which he determined that Plaintiff could not perform his past relevant work as a laborer, dishwasher, and a housekeeper but had the residual functional capacity ("RFC") to perform substantially all of the full range of medium work in other jobs that exist in significant numbers in the national economy, and was therefore not disabled (R. 25-6). Plaintiff requested review of the ALJ's hearing decision, which was denied on May 11, 2006, making the

ALJ's decision the final decision of the Commissioner (R. 3-11). This action timely followed (Doc. No. 1), and the decision is ripe for review.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims disability as of February 10, 2003, based on left leg pain and a psychological impairment (R. 51B, 41, 139).

### *Summary of Evidence Before the ALJ*

Plaintiff was 54 years old at the time he filed his applications, and was 56 years old, considered "advanced age," when the ALJ issued his February 23, 2006, decision (R.. 27, 51B, 141). Plaintiff

obtained a high school education in Cuba, and a General Equivalency Diploma in the United States, and had past relevant work experience as a laborer, dishwasher, and housekeeper/custodian (R. 65, 141).

The medical evidence before the ALJ was sparse. Although Plaintiff claims an onset of disability as of February 10, 2003, there are no treatment records at all from 2003.

The earliest record submitted is a consultative examination from a state agency physician, family practitioner Eric A. Moore, M.D., dated September 15, 2003 (R. 88-90). Plaintiff reported to Dr. Moore that he had pain in his left leg and lower back following a motor vehicle accident in 1982, which broke his left femur. In 1992, he fell, reaggravating the injury (R. 88). Plaintiff reported that he takes ibuprofen for pain. He stated that he was able to dress himself, shower, cook and clean and was able to drive. He reported difficulty when walking about 2-3 blocks and pain in his back if he sits too long. *Id.* On examination, Plaintiff ambulated "quite normally" without any assistive devices; there was no tenderness in his lower back, no deformities or muscle wasting in his left leg. Plaintiff

was able to walk in a straight line, and hop on one foot without difficulty (R. 88). Sensation was normal to light, deep tendon reflexes were equal throughout, and grip strength was 5/5, with left lower extremity being 4/5. Range of motion was normal to mildly reduced (R. 88-89). "[B]ased on the fact that [he] didn't find many problems with patients [sic] musculoskeletal system," Dr. Moore concluded that Plaintiff could be expected to stand at least 6 hours in an eight hour day, without pain and discomfort (R. 89). Plaintiff could sit for approximately 6 hours and walk for approximately four hours. Dr. Moore felt Plaintiff could lift and carry 10 pounds occasionally but not for long distances. He should be able to stoop, bend or crouch for limited amounts of time. Dr. Moore concluded: "During this exam I am unable to locate any focus of pain; his exam is essentially normal, maybe mild weakness on left lower extremity." (R. 89).

The next record is a Residual Functional Capacity ("RFC") Assessment dated September 29, 2003, completed by a non-examining state agency physician (R. 91-98). Based on a review of the record, the physician felt that Plaintiff could perform light work in that he could lift 20 pounds occasionally, ten pounds frequently and sit, stand or walk for 6 out of 8 hours and could occasionally climb, stoop, and crouch. (R. 92-3). Another non-examining state agency physician completed an RFC assessment based on the evidence available for review on December 14, 2003 (R. 99-107). This physician indicated that Plaintiff could perform medium work in that he could lift 50 pounds occasionally, 25 pounds frequently, and could sit, stand or walk 6 hours out of an 8-hour workday (R. 100). This physician opined that the "symptoms are disproportionate to the objective data." (R. 104).

As for treatment records, the earliest record is dated October 14, 2004, from Dr. Eugene Silverstein, a physician at Lakeside Alternatives (R. 134-5). Plaintiff presented to the facility "complaining of suicidal ideation." On examination, however, Plaintiff revealed that "he is not really

suicidal but just wants to get some help." (R. 134).  It was noted that: "Current stressor include[s] the need to make payment to his probation officer and he does not have the money.  That could have some bearing on less obvious motivations for his admission." (R. 134).  Plaintiff admitted to abusing alcohol, with three DUI arrests, and was drinking the day of his admission (R. 134).  On mental status examination, Plaintiff was alert, oriented, calm, rational, pleasant and cooperative (R. 135).  He communicated adequately in English.  He admitted to being depressed, but denied suicidal ideation, hallucinations, delusions, ideas of reference, or paranoia.  *Id.*  Assessment was alcohol induced mood disorder, rule out major depression.  His Global Assessment of Functioning ("GAF") was 36.  He was put on a detoxification regimen and was prescribed Lexapro to elevate his mood.  In addition he was to attend group and individual counseling on the unit.  *Id.*  His discharge report dated October 18, 2004, confirms the diagnosis of alcohol induced mood disorder and indicates that his GAF was 45 on discharge (R. 131-33).

Plaintiff was seen again at Lakeside on November 1, 2004, and denied any suicidal thoughts. (R. 128).  His diagnosis continued to be alcohol induced mood disorder and his GAF score at this time was recorded as 60. *Id.*  He was continued on Lexapro.  Plaintiff returned on November 30, 2004, complaining of depression and hearing voices calling his name (R. 126).  There was no change to the diagnosis, but Risperdal, a new medication, was added and his Lexapro was increased.  *Id.*

On December 28, 2004, Plaintiff returned to Lakeside, reporting that "I do ok so long as I take my meds." (R. 124).  His mood was negative for depression, he was alert and oriented, his thought process was logical and insight and judgment were fair.  *Id.*  There was no change in the diagnosis and his GAF was assessed at 45 by a registered nurse practitioner.  Return visit was scheduled for three months later.

Records from the Pine Hills Family Health Center show that Plaintiff presented for initial visit on January 20, 2005 (R. 110), complaining of leg pain and a history of depression. He reported his pain as 1-3 on a 1 to 10 scale. *Id.* Assessment was left leg pain, tobacco abuse and depression. Plan was to have the leg x-rayed and ibuprofen was suggested. The x-ray report dated February 9, 2005, indicated no acute radiographic bony abnormality (R. 115). Soft tissue structures were intact and there was no fracture or dislocation. The findings were consistent with a previous left femoral diaphyseal fracture and an intramedullary rod. (R. 115).

Plaintiff returned to the health center on March 16, 2005, continuing to complain of pain (R. 109). This time, Plaintiff placed his pain level at 4-6 on the 1-10 scale. No abnormal findings were noted on the treatment notes. Assessment was left limb pain.

Additional x-rays dated April 20, 2005, showed in addition to the intramedullary rod and the old healed fracture, degenerative calcification between the acetabular region and greater trochanter, and near the old fracture site. (R. 114).

On April 22, 2005, Plaintiff returned to Lakeside, complaining of auditory hallucinations, not sleeping and bad dreams (R. 122). Medications remained unchanged, as did Plaintiff's diagnosis of polysubstance mood disorder.

On August 24, 2005, Plaintiff returned to Pine Hills Heath Center, asking for pain medication (R. 108). Plaintiff rated his pain 7-8. No new findings were made and diagnosis was chronic left limb pain. Ibuprofen was recommended.

On August 26, 2005, Plaintiff returned to Lakeside, reporting that he was doing "so so." (R. 119). He stated that he feels good when taking his medications, but he ran out of medication 3-4 days prior. His speech was assessed as normal; memory and concentration were noted to be good, insight

-5-

and judgment were fair. Auditory hallucinations were noted. His diagnosis remained the same, and his GAF was assessed by a registered nurse practitioner at 45 (R. 119-120).

The last medical record in the file is from Lakeside, and is dated November 18, 2005 (R. 116). Plaintiff presented to a registered nurse practitioner with complaints of insomnia, auditory hallucinations, paranoia, and frequent headaches. His mood/affect were recorded as congruent and depressed. His speech was normal, memory was good and his behavior cooperative and appropriate. Judgment and insight were fair. His Risperdal was increased from 2 mg to 3 mg because of the continuing auditory hallucinations and paranoia (R. 117). For the first time, his diagnosis was changed to major depressive disorder with psychotic features, but his GAF remained unchanged at 45 (R. 117). Return visit was scheduled for three months.

Plaintiff appeared and testified at his hearing. He stated that he had a driver's license, which was taken away due to a DUI (R. 143). Plaintiff stated that his lower back pain and left leg pain would keep him from doing any kind of work, in that it hurts him "most of the time." (R. 146-147). He noted that he continues to be depressed, and that he hears voices calling him, and that he first heard these voices over a year ago, or possibly even earlier (R. 146). He is able to dress himself and take care of his personal needs (R. 149), lives with his 80 year old mother, and she does everything around the house, including his laundry and cooking for him (R. 149). He watches TV most of the day, and takes the bus to Lakeside (R. 150). He stated that he could walk for two blocks or more if he is in a hurry to catch the bus (R. 151). He stated that his memory is not good (R. 154). He stated that he gets uncomfortable at times while seated; for example, when watching television, he could sit ten minutes or so before needing to get up and move around, and that he can not stand up too long before needing to sit down (R 150-151).

No vocational expert appeared or testified.

In his decision, the ALJ found that Plaintiff had the impairment of residuals of left leg fracture, but that Plaintiff did not have a severe mental impairment (R. 23-24). The ALJ found that Plaintiff had the RFC for the full range of medium work (R. 25), without nonexertional impairments. Applying the Medical-Vocational Guidelines, the ALJ determined that Plaintiff was not disabled.

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560;

*accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff asserts that the ALJ erred in failing to find Plaintiff's depression to be a severe impairment. Plaintiff also contends that the ALJ's RFC assessment and credibility finding are not supported by substantial evidence. Finally, Plaintiff contends that the ALJ erred in not obtaining vocational expert testimony.

*Plaintiff's alleged mental impairment*

The ALJ summarized the treatment records with respect to Plaintiff's mental impairment and found as follows:

> The undersigned notes that although the claimant indicated doing okay as long as he takes his medications . . .he tends to run out of his prescription medications . . .With regard to the "B" criteria, the undersigned finds the claimant has mild restrictions of daily living (able to bathe and dress himself and reports that his mother does the cooking and cleaning); mild difficulties in maintaining social functioning (able to use public transportation and reports that he has no friends); mild difficulties in maintaining concentration, persistence, or pace (watches television); and no episodes of decompensation. Thus, the undersigned finds that the claimant does not have a severe mental impairment.

(R. 24).

Plaintiff contends that these findings are not based upon substantial evidence because Plaintiff's mental impairment is "severe" within the meaning of step two of the sequential analysis, and the ALJ failed to note and credit the consistently low GAF scores. The Court is not persuaded.

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments

-8-

which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Here, with respect to Plaintiff's allegations of depression, the ALJ determined at step two that Plaintiff's impairment did not significantly limit his mental ability to do basic work activities.

As pointed out by Plaintiff, a step two analysis is a threshold inquiry. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *McDaniel v. Bowen,* 800 F. 2d 1026, 1031 (11th Cir. 1986). A claimant need show only that his impairment is not so slight and its effect is not so minimal. *Id.* As support for his contention that his mental impairment is, in fact, severe, Plaintiff points to his complaints of depression and auditory hallucinations, and the fact that these complaints increased, even though he was placed on medication. The record does, in fact, provide some support for this argument. The task of this Court, however, is not to reweigh evidence or decide anew, but to scrutinize the record to determine the reasonableness of the ALJ's findings and to sustain those findings if adequately supported, even in the case of other evidence to the contrary. Here, the findings of the ALJ are so supported.

As pointed out by the Commissioner, for the vast majority of his treatment at Lakeside, Plaintiff's diagnosis was alcohol induced mood disorder. Indeed, Plaintiff was noted to be drinking

the date of his admission to the facility, and had admitted to several DUI arrests.  Plaintiff was not diagnosed with major depression until November 18, 2005, the last treatment note of record.  As a claimant cannot be considered disabled due to a contributing factor of alcoholism or drug addiction, 42 U.S.C. § § 423(d)(2)(c), 1382c(a)(3)(J), the pre-November 2005 Lakeside treatment findings are not persuasive of a non-alcohol related mental impairment.

Moreover, while the records do contain complaints of depression and suicidal ideation, Plaintiff also indicated that he was not truthful regarding such ideation, and his physician noted "other motives" for his admission.  While Plaintiff was, indeed, taking medications for his reported auditory hallucinations, there is no indication that his treatment providers felt his condition to be severe or occupationally limiting.  Other than the initial admission, he was released to his own recognizance, and treatment visits were few and far between (sometimes scheduled for three months hence). Plaintiff reported that he did "ok" as long as he took his meds and the record supports this, as there is no report of any emergency visits in between regularly scheduled appointments, nor does the record show any episodes of decompensation.  Treatment records throughout show mild or normal findings on mental status exam, save for depressed mood.  Thus, there is no showing that Plaintiff's impairment, to the extent it is not based on alcohol abuse, is more than slight and its effect more than minimal.

As for the GAF scores, as recognized by the Eleventh Circuit, GAF scores are not *per se* substitutes for the severity analysis:

> We note, however, that, as the Commissioner concedes, the Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements of the mental disorders listings." See 65 Fed.Reg. 50746, 50764-65 (Aug. 21, 2000).

*Wind v. Barnhart* 133 Fed.Appx. 684, at 692, 2005 WL 1317040, 6 at fn. 5 (11th Cir. 2005); *see also DeBoard v. Commissioner of Social Security,* 2006 WL 3690637 (6th Cir. 2006) (slip opinion) (noting that failure to reference a GAF score is not sufficient to reverse a disability determination); *Kornecky v. Comm'r of Soc. Sec.*, 2006 WL 305648 (6th Cir. 2006) ("[A]ccording to the [Diagnostic and Statistical Manual's] explanation of the [Global Assessment Functioning] scale, a score may have little or no bearing on the subject's social and occupational functioning . . . . [W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a [Global Assessment Functioning] score in the first place."); *Newsome ex rel Bell v. Barnhart,* 444 F. Supp.2d 1195 (M.D. Ala. 2006) (noting that GAF score is not an assessment of a claimant's ability to work, and "[N]owhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." (internal citations omitted).) Thus, while it is true that the ALJ did not discuss the GAF scores, this is of no moment in that it is clear from the ALJ's decision, which references the very records containing the GAF scores, that the records were considered in formulating his findings. More is not required.

*The RFC determination*

Plaintiff next contends that the ALJ erred in formulating his RFC determination. Plaintiff contends in addition to not finding any functional limitations flowing from Plaintiff's mental impairment, the ALJ's determination that Plaintiff could perform exertional demands of medium work "lack record support." The Court disagrees.

The ALJ found that Plaintiff could perform the exertional demands of medium work (R. 25). In so concluding, the ALJ noted the physical examination of Dr. Moore, which was "essentially normal," the minimal treatment for Plaintiff's physical problem, the fact that Plaintiff takes only over-

-11-

the-counter medications for pain, and the opinion of the second state agency reviewer. These findings are amply supported in the record, as noted above.

Plaintiff complains that the ALJ did not credit the *opinion* of Dr. Moore, which placed Plaintiff on essentially sedentary work status, nor the opinion of the first reviewing physician, who opined that Plaintiff could perform light work. The Court sees no error.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record

-12-

as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, there is no opinion from any treating physician that Plaintiff had disabling limitations. To the extent consultant Dr. Moore limited Plaintiff to sedentary work, the ALJ did not err in discounting that opinion. As noted above, Dr. Moore indicated that Plaintiff's physical examination was "essentially normal, maybe mild weakness on left lower extremity." (R. 89). Dr. Moore also noted that he could not find any reason for Plaintiff's subjective complaints of disabling pain. *Id.* As such, it was not error for the ALJ to find that his opinion was inconsistent with his examination notes. Similarly, the first reviewing physician's conclusion that Plaintiff could perform light work was also adequately discounted as inconsistent with the only record evidence at the time: Dr. Moore's "essentially normal" examination. As for the ALJ crediting the second reviewer's opinion that Plaintiff could perform medium work, as noted above, this decision is supported by substantial evidence. Nothing in the subsequent treatment notes contradicts this conclusion and Plaintiff identifies no record evidence of worsening of his impairment (a remote long-healed fracture) from the date of the second reviewer's opinion. The RFC assessment is supported by substantial evidence.

*Pain, Credibility and the use of a Vocational Expert*

Plaintiff next contends that the ALJ erred in his evaluation of Plaintiff's allegations of pain and his credibility, and should have used a vocational expert instead of relying solely on the Medical-Vocational Guidelines.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Applied here, the ALJ noted that Plaintiff had an impairment that could reasonably be expected to cause the alleged symptoms (step one of the pain standard), but not to the extent alleged, in that Plaintiff's allegations "concerning the intensity, duration, and limiting effects" of the symptoms were not credible (R. 25). There is adequate record support for this conclusion. As noted by the ALJ, Plaintiff has had minimal treatment for his physical problems. Indeed, even though Plaintiff claims to be disabled as of February 2003, he first sought treatment in January 2005. That treatment, which lasted only until August 2005 – less than a year's duration– consisted solely of ibuprofen.[1] Moreover, the treatment records themselves do not support complaints of disabling pain. On his first visit, almost two years after the claimed onset of disability, Plaintiff rated his pain as only 1-3 on the 10 point scale.

The credibility determination is amply supported, as is the ALJ's conclusion that Plaintiff did not suffer disabling pain.

As for the failure to retain a vocational expert, the Court sees no error. Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote*, 67 F.3d

---

[1] Although Plaintiff notes that Plaintiff was taking 600 mg of Ibuprofen, and states that "this is not an over the counter medication" this is misleading. The drug is available both over the counter and by prescription. The maximum amount of ibuprofen for adults is 800 milligrams per dose (http://www.drugs.com/ibuprofen.html). Thus, regardless of whether Plaintiff was taking one 600 mg prescription pill or three non-prescription 200 mg pills, Plaintiff was taking *less* than the maximum dosage.

at 1558.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."  *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  *Foote*, 67 F.3d at 1559.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.  *Foote*, 67 F.3d at 1559.

Applied here, as the ALJ sufficiently discredited Plaintiff's allegations of disabling pain (a non-exertional impairment), and the finding that Plaintiff can perform the full range of medium work is supported by substantial evidence, the ALJ did not err in exclusive reliance on the grids.  No vocational expert testimony was needed.

## *CONCLUSION*

The decision of the Commissioner was supported by substantial evidence and was made in accordance with proper legal standards.  As such, it is **AFFIRMED.**  The Clerk is directed to enter judgment accordingly and close the case.

**DONE** and **ORDERED** in Orlando, Florida on April 3, 2007.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record